UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
HECTOR MEDINA,

                           Petitioner,                        19-cv-10724 (PKC)
                                                                      15-cr-778 (PKC)

                          -against-                                 ORDER

UNITED STATES OF AMERICA,

                           Respondent.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Petitioner Hector Medina, proceeding pro se, moves to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. Medina argues that he received ineffective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution. For reasons that will be explained, Medina's motion will be denied.

        Medina was charged in a two-count indictment with one count of conspiracy to distribute one kilogram and more of heroin and one count of possession with intent to distribute heroin. (15 Cr. 778, Doc 24). On January 5, 2017, pursuant to a plea agreement with the government, Medina entered a plea of guilty to both counts of the Indictment. On June 19, 2017, the Court sentenced Medina principally to a below-guidelines sentence of 240 months' imprisonment. (15 Cr. 778, Doc 130). Medina appealed his sentence arguing that the district court improperly found him to be a career offender under section 4B1.1(a) of the United States Sentencing Guidelines and that his sentence was substantively unreasonable. The Second Circuit affirmed the judgment in a summary order on May 24, 2018, see United States v. Medina, 734 Fed. App'x 777 (2d Cir. 2018) (Summary Order).

During the course of his district court and appellate proceedings multiple attorneys represented Medina. Medina's first attorney was appointed counsel on June 15, 2015 pursuant to the Criminal Justice Act ("CJA") and withdrew on November 18, 2015 upon Medina's retention of counsel at his initial arraignment. (15 Cr. 778, Doc 7 and Minute Entry dated 11/18/2015). The second attorney who Medina retained withdrew, and on July 27, 2016 a third attorney was appointed counsel pursuant to the CJA. (15 Cr. 778, Minute Entry dated 7/27/2016). On May 5, 2017, after his plea and before sentencing, Medina sought to have the Court terminate this attorney's appointment, which the Court denied. (15 Cr. 778, Doc 121). Medina's third attorney represented him at his change of plea, sentencing and appeal to the Second Circuit.

Medina's petition asserts that he received ineffective assistance of counsel in three respects: (1) the first attorney who represented Medina in the pre-indictment phase advising Medina to participate in proffer sessions with the government; (2) the first attorney allegedly negotiating a "better" plea offer that would not carry a ten-year mandatory minimum sentence when the plea agreement Medina ultimately received did include the mandatory minimum sentence; and (3) the third attorney who represented Medina at his change of plea, sentencing and appeal failing to adequately advance the argument that the Court's application of the Guidelines would implicate the *Ex Post Facto* Clause of the Constitution. (19 Civ. 10724, Doc 1). No claim of ineffective assistance of counsel is asserted against the second attorney.

To prevail on an ineffective assistance of counsel claim, Medina "must demonstrate that: (1) his counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." McCoy v. United States, 707

F.3d 184, 187 (2d Cir. 2013) (citing Strickland v. Washington, 466 U.S. 668, 687–88 (1984)).  In deciding whether counsel's representation fell below the objective standard of reasonableness, there is a "strong" presumption that counsel's performance was adequate and that the attorney "'made all significant decisions in the exercise of reasonable professional judgment.'"  Jackson v. Conway, 763 F.3d 115, 152 (2d Cir. 2014) (quoting Cullen v. Pinholster, 563 U.S. 170, 189 (2011)).  A petitioner "bears a 'heavy' burden" to establish that an attorney's performance "was unreasonable under 'prevailing professional norms.'"  McCoy, 707 F.3d at 187 (quoting Harrington v. United States, 689 F.3d 124, 129–30 (2d Cir. 2012)).  "'[C]ounsel's performance must be assessed . . . as of the time of counsel's conduct without the benefit of hindsight.'"  Id. at 188 (quoting Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001)).

The Decision to Participate in Proffer Sessions.

      Medina states that when he participated in proffer sessions with the government his attorney "[d]amag[ed] proper negotiation or a fair trial by not investigating first of a policy for a second time cooperator.  Then tells me about the policy weeks later and agrees I should get a sentence reduction anyways."  (19 Civ. 10724, Doc 1 at 6).  His attorney has submitted a sworn declaration addressing Medina's claims pursuant to the Court's order of January 28, 2020.  (Gov't Response Ex. D).

      As recounted at sentencing, Medina cooperated with the federal government on two prior occasions in connection with his 2007 convictions on sixteen Hobbs Act conspiracy and substantive robbery counts and his 2012 conviction for conspiring in a tax fraud scheme.  (Gov't Response Ex. C, June 19, 2017 Sentencing Tr. at 12-13).  In his declaration, his attorney states that Medina wanted to pursue a cooperation agreement on the matters leading to his arrest.  (Gov't Response Ex. D ¶ 5).  The attorney informed Medina there was no guarantee that

engaging in proffer sessions with the government would lead to a cooperation agreement and that "his prior cooperation and subsequent arrest were not favorable factors" weighing in favor of him receiving such an agreement. (Gov't Response Ex. D ¶ 5). The proffer agreement that Medina signed further stated that "this is not a cooperation agreement" and that the "Government makes no representation about the likelihood that any such agreement will be reached in connection with this proffer." (Gov't Response Ex. E). Medina engaged in multiple proffer sessions, but the government ultimately decided not to enter into a cooperation agreement with him.

    Medina's petition asserts that his lawyer failed to alert him that the government had a "policy" against entering into a cooperation agreement with individuals who previously cooperated. At the initial proffer sessions, his then lawyer states that the Assistant was aware of Medina's prior cooperation but did not raise such a "policy" and appeared genuinely interested in Medina's cooperation and to be operating in "good faith." (Gov't Response Ex. D ¶¶ 5–6). But around July 2015, Medina's attorney states that the Assistant told him "there was pushback from his supervisors, based upon a 'policy' against signing up a cooperator, who had already cooperated." (Gov't Response Ex. D ¶ 7). In response, the attorney informed the Assistant that he previously represented a client who was a three-time cooperator. (Gov't Response Ex. D ¶ 8).

    Emails between Medina and his then attorney during the period when Medina was attempting to cooperate indicate government resistance to an agreement. On September 1, 2015, the attorney told Medina that the "AUSA is having enough trouble with his supervisors as it is" regarding the cooperation agreement. (19 Civ. 10724, Doc 1 at 4). The next month the attorney noted in an email to Medina that the "AUSA & Agent want to work with you – the trouble is some sort of policy of the Office." (19 Civ. 10724, Doc 1 at 5).

The government contends that no "policy" exists. Instead it claims that an "individualized assessment was made weighing Medina's prior history as a prior cooperating witness who had gone on to commit additional crimes against his potential to provide substantial assistance." (Gov't Response at 13).

Medina has not made a showing that his lawyer was ineffective in advising him to engage in proffer sessions with the government. Medina had previously cooperated and later reoffended and this circumstance made it less likely that Medina would secure a cooperation agreement. The attorney advised Medina of this very risk prior to his engaging in proffer sessions. See Davis v. Greiner, 428 F.3d 81 (2d Cir. 2005) (concluding counsel's performance was deficient for failing to inform defendant that "before the proffer session that his statements could be used against him if he stood trial"). The attorney also had a reasonable basis for believing, even if not likely, that securing a cooperation agreement was possible and outweighed the risks of engaging in the proffer sessions. In emails with Medina, the attorney noted that engaging in proffer sessions could be favorable at sentencing regardless of whether there was a cooperation agreement. (See Gov't Response Ex. D ¶ 10 and accompanying exhibit D) (noting that a defendant's attempted cooperation with the government may be properly considered at sentencing under the Second Circuit's decision in United States v. Fernandez, 443 F.3d 19, 33 (2d Cir. 2006)). Medina's third attorney, who represented him at sentencing, in fact raised Medina's attempted cooperation in his sentencing submissions, (Medina Sentencing Letter dated June 12, 2017 at 3–4), and Medina ultimately received a below-Guidelines sentence. In addition, the Court credits the attorney's statement that he previously represented an individual under similar circumstances to Medina who received a cooperation agreement. The attorney further attests that at initial proffer sessions the government seemed open to working with Medina and

did not mention the "policy" until later in the process. The attorney informed Medina upon learning of the "policy" and alerted him that there was pushback from supervisors in the United States Attorney's Office. According to the attorney, Medina was aware he was not certain to receive a cooperation agreement. (Gov't Response Ex. D ¶ 5). This is confirmed by the terms of the proffer agreement Medina signed, which explained that the government does not make a representation about the likelihood of receiving such an agreement.

The attorney advised Medina that there were risks to engaging in proffer sessions, had a basis for believing that this course of action could be beneficial, and believed, based on the conduct of the Assistant at the proffer session, that the government showed some level of interest in a cooperation agreement. For these reasons, the Court concludes Medina's first attorney who represented him in the pre-indictment phase exercised reasonable professional judgment and his performance was not constitutionally deficient.

Even if Medina could establish that the attorney's performance was deficient, he has made no showing of prejudice. Nothing in the petition indicates Medina would have proceeded to trial but for engaging in the proffer sessions. There is no evidence that any of Medina's statements from the proffer sessions were used against him or led to additional evidence being obtained that would have altered the weight of evidence against Medina. See United States v. Castro, No. 04-cr-664 (TPG), 2009 WL 423969, at *2 (S.D.N.Y. Feb. 11, 2009) (concluding defendant failed to establish prejudice when there was "no indication that the attorney's advice regarding the proffer session affected the jury's verdict in any way").

Counsel's Performance During Plea Negotiations.

Medina next faults the attorney who represented him in the pre-indictment phase for his conduct during plea negotiations. Medina states that the attorney "mention[ed]

negotiations about a better plea than a 10 year mandatory minimum." (19 Civ. 10724, Doc 1 at 7). The attorney explains that before withdrawing as counsel he engaged in some plea negotiations with the government and "discussed a possible plea that would have a sentencing range of 6 or 7 years." (Gov't Response Ex. D ¶ 11).[1]

Medina has failed to identify any specific actions taken by his first attorney during plea negotiations that denied him effective counsel. See Strickland, 466 U.S. at 690 ("A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of professional judgment."). "During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" Lafler v. Cooper, 566 U.S. 156, 162 (2012) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). But a defendant "has no right to be offered a plea . . . ." Missouri v. Frye, 566 U.S. 134, 148 (2012). Both the government and the attorney state that a formal plea offer was not made, and Medina does not contest otherwise. Counsel has a duty to inform his or her client of a formal plea offer, but this duty does not arise when no such offer existed. Id. 145–46. In fact, the attorney performed in line with his professional responsibilities by updating Medina on the status of the negotiations even in the absence a formal offer. See N.Y. Rule Prof Conduct 1.4(a)(1)(iii) (2020) ("A lawyer shall promptly inform the client of . . . material developments in the matter including settlement or plea offers"); Id. R. 1.4(a)(3) ("A lawyer shall . . . keep the client reasonably informed about the status of the matter.").

---

[1] The petition attaches an email exchange between Medina and his first attorney from March 2017, over a year after that attorney had withdrawn as Medina's counsel. Medina asks how the attorney "was going to lower my sentence the government made me plea to a (B)(1)(A) and never offer me anything lower." (Doc 1 at 8). The attorney responds this was "different than what we were speaking about" and that "the offer is in the hands of the Government." (Doc 1 at 8). While the context of the discussion is not entirely clear, the emails do not provide support that a formal plea offer for less than the 10-year mandatory minimum was ever made.

The lack of any formal plea offer in this case also means that to establish prejudice Medina must go further to show that a favorable offer would have been made and accepted and resulted in a lower sentence.  Lafler, 566 U.S. at 164 ("In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the Court . . ., that the court would have accepted its terms, and that the conviction or sentence, or both, under the offers' terms would have been less severe than under the judgment and sentence that in fact were imposed."). There is no indication here that but for the conduct of Medina's attorney the government would have offered a plea agreement that would not have required Medina to plead to an offense carrying a 10-year mandatory minimum.

Medina has not made a showing that his first attorney who represented him in the pre-indictment phase was ineffective in plea negotiations or that he was prejudiced based on a failure to receive competent advice that would have resulted in a different outcome of the plea process.

Counsel's Performance at Sentencing.

Lastly, Medina argues the appointed counsel who represented him at his change of plea, sentencing and appeal failed to fully research and pursue the argument that applying the version of the Guidelines in effect at his sentencing implicated the *Ex Post Facto* Clause. Medina relies on a case from the District of Kansas, see United States v. Cloyd, No. 14-cr-20118 (JAR), 2016 WL 1718861 (D. Kan. Apr 29, 2016) supporting his *ex post facto* argument that the attorney failed to locate.

The Court applied the November 1, 2016 Guidelines Manual in effect at the time of sentencing.  United States v. Pereira-Gomez, 903 F.3d 155, 160 n.6  (2d Cir. 2018).  It found

that Medina was a career offender under § 4B1.1(a) of the United States Sentencing Guidelines. In reaching that determination, the Court relied on Medina's 2002 New York state conviction for robbery in the first degree and his 2007 convictions on sixteen Hobbs Act conspiracy and substantive robbery counts. Medina argued that his 2002 state conviction and 2007 federal convictions should count as a single offense for purposes of determining his career offender status. For this proposition, he implicitly argues that the Court should have applied the version of the Guidelines that pre-dated the November 1, 2007 amendment and that the Court's failure to do so violated the *ex post facto* clause. But the offense conduct for which he was sentenced by the Court entirely post-dated the November 1, 2007 amendment.

Both this Court at sentencing and the Second Circuit on appeal rejected his *ex post facto* argument. (Sentencing Tr. at 9-10); Medina, 734 Fed. App'x at 779–80. As the Second Circuit stated, "[b]ecause Medina's conduct that formed the basis of the instant convictions post-dated the November 2007 amendments to the Guidelines, there is no *ex post facto* or other legal basis to apply the pre-amendment version of the Guidelines." Id. (citing United States v. Rodriguez, 989 F.2d 583, 587 (2d Cir. 1993). Accordingly, Medina cannot show prejudice because even if the out-of-circuit district court opinion in Cloyd had been identified and raised by his attorney at sentencing, there would not have been a different outcome.

Medina has also failed to establish that his attorney's representation was ineffective at sentencing. In fact, the attorney identified the *ex post facto* issue and advanced the argument at sentencing. (Sentencing Tr. at 7).

CONCLUSION

Medina's petition for relief pursuant to section 2255 is DENIED. The Clerk is directed to close the case (19 cv 10724) and to terminate the related motion in the criminal case (15 cr 778, Doc 170). The Clerk is directed to mail a copy of this Order to Medina and note service on the docket.

The government shall mail Medina copies of all unreported decisions cited herein.

Medina has not made a substantial showing of the denial of a constitutional right and, accordingly, a certificate of appealability will not issue. 28 U.S.C. § 2253; see Blackman v. Ercole, 661 F.3d 161, 163-64 (2d Cir. 2011). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

>                                    _____
>                                           P. Kevin Castel
>                                    United States District Judge

Dated: New York, New York
       January 5, 2021